**NOT FOR PUBLICATION**

## UNITED STATES DISTRICT COURT
## DISTRICT OF NEW JERSEY

|  |  |  |
|---|---|---|
| MARC GREENBERGER and NANCY GREENBERGER, | : | |
| | : | |
| Plaintiffs, | : | Civil Action No. 13-7920 |
| | : | |
| v. | : | **OPINION** |
| | : | |
| VARUS VENTURES LLC, TRADITION SOURCING, LLC, NICHOLAS P. SANDOR, and DAVID GULLIAN, | : | |
| | : | |
| Defendants. | : | |

PISANO, District Judge

Plaintiffs, Marc and Nancy Greenberger ("Plaintiffs" or the "Greenbergers"), brought this suit, seeking damages for allegedly being induced into investing retirement funds into a sham financial vehicle. This matter comes before the Court on a motion to dismiss, or, alternatively, for a more definite statement pursuant to Federal Rules of Civil Procedure 12(b)(6) and 12(e) by Defendant David Gulian ("Defendant" or "Gulian"). Plaintiffs oppose the motion. The Court decides these matters without oral argument pursuant to Federal Rule of Civil Procedure 78. For the reasons set forth below, the Court grants in part and denies in part Defendant's motion.

**I.      Background**

Starting in 2010, Nicholas Sandor ("Sandor") began soliciting Marc Greenberger to invest personal funds with a wealth advisory group in which Sandor was involved. Plaintiffs allege that, as a result of Sandor's solicitations, Mr. Greenberger invested certain personal funds with Sandor's group.

Subsequently, Sandor introduced Mr. Greenberger to Gulian.  Sandor and Gulian represented to Mr. Greenberger that they were creating an investment fund to be known as "Varus Ventures."  They each advised Mr. Greenberger that they would be the leaders of Varus, and that they would use Varus as a vehicle through which they would make targeted investments in companies that they, and in particular Gulian, would identify.  Plaintiffs allege that Gulian represented himself as the creator of Varus and a leader of the fund.  Sandor echoed this sentiment, telling Mr. Greenberger that Gulian was the "money guy," the "fund manager," and the "brains behind the operation" of Varus.  Sandor, on the other hand, was responsible for sales.

Plaintiffs allege that Sandor and Gulian contacted Mr. Greenberger, either together or separately, no less than fifty separate occasions from late 2010 and into 2011 about investing in Varus.  Often, Sandor and Gulian would bring up investing in Varus during personal visits; for example, when Sandor and Gulian visited the Greenbergers' home, they would speak in detail to Mr. Greenberger about investing in Varus.  Gulian identified numerous companies for the Greenbergers to invest in, and provided Mr. Greenberger with documents and other details about these companies. Gulian also put Mr. Greenberger in touch with several of the companies that Sandor and Gulian were identifying as investments for Varus, and encouraged Mr. Greenberger to invest in them through Varus.  Plaintiffs allege that Sandor and Gulian each solicited and made representations concerning the value and potential reward of the investments in order to convince the Greenbergers to invest money in Varus.  Sandor and Gulian each represented that they were experienced investors and had expertise in the investment business, particularly in investment-type vehicles such as Varus.  They explicitly advised Mr. Greenberger that the Greenbergers' investments with them would be made through their venture, Varus, which they purported to own and control.

On or about February 9, 2011, the Greenbergers purchased $36,000 worth of ownership interests in Tradition, a company that purportedly manufactures golf accessorizes, allegedly as a result of the numerous representations of Gulian and Sandor.  They understood and believed that this purchase was made through Varus.  Subsequently, on or about August 26, 2011, the Greenbergers purchased $68,000 worth of ownership interest in Varus.  They made this purchase based upon the representations and solicitations of Gulian and Sandor, particularly their representations that they owned and controlled Varus, that they would manage Varus's investments and opportunities, and that they would provide the Greenbergers with proper documentation and reporting concerning their investments.

The Greenbergers made their respective investments through two Individuals Retirement Accounts ("IRA"), one in each of their respective names.  These IRAs were administered by Entrust CAMA Self-Directed IRA, LLC PA ("CAMA").  To maintain the IRA accounts, regular administrative and custodial payments were required to be made to CAMA.  Plaintiffs allege that Sandor and Gulian repeatedly assured the Greenbergers that they would cause Varus to make the necessary payments to CAMA as they became due.  Plaintiffs allege that it was a condition of their investments in and through Varus that Varus would cover CAMA's administrative expenses to maintain these accounts.  These administrative and custodial fees for the Greenbergers' respective IRAs were paid for approximately two years, although Sandor allegedly needed constant reminding and missed or delayed certain payments.

In the weeks and months subsequent to making these initials investments, Mr. Greenberger had difficulty contacting either Gulian or Sandor.  Both ceased contacting Mr. Greenberger after the Greenbergers invested funds in Varus, and failed to return his phone calls. Despite Mr. Greenberger's numerous requests, Plaintiffs never received any unit or ownership

certificates reflecting their investments in Varus.  Ultimately, Plaintiffs invested a total of

$213,000 in or through Varus, allegedly in response to the solicitations of Sandor and Gulian and

the representations each of them made concerning their investments.

In April 2012, Mr. Greenberger requested that Sandor and Gulian divest and return to

them their respective investments.  Because he received no response, he repeated this request

several times over the next year.  In or about the last quarter of 2012, the administrative

payments to CAMA ceased, without any notice to the Greenbergers and allegedly without any

justification.   Thereafter, by letters dated June 3, 2013, CAMA terminated each of the accounts

of the Greenbergers, based upon the failure to pay the requisite administrative fees.  CAMA

advised the Greenbergers that their IRA accounts were empty, with no funds left to divest or

return.  The Greenbergers have sustained substantial tax consequences and penalties, as a result

of alleged malfeasance of Sandor and Gulian, and CAMA's premature termination of these

accounts.

Over the past several months, Sandor and Gulian have failed to communicate with Mr.

Greenberger, have ignored his written and oral communications for information concerning

Plaintiffs' investments in and through Varus, and have failed and refused to confirm that Varus

even continues to hold their respective investments.  Varus has abandoned its former mailing

address, and has shut down its website, and is no longer functioning as a going forward entity.

Plaintiffs question whether Varus ever existed as an entity, because they never received any

proof that Sandor and Gulian actually created Varus or that Varus formally existed.

Subsequent to the filing of this action, Mr. Greenberger has received text messages from

Sandor, apologizing to Mr. Greenberger and claiming to have experienced some personal

problems.  Sandor provided no information regarding the $213,000 that the Greenbergers had

invested in and through what they believed to be Varus, based upon the representations of Sandor and Gulian.  Sandor also provided an affidavit to counsel for the Greenbergers, dated February 11, 2014 (the "Sandor Affidavit"), in which Sandor claims that Gulian "formally acknowledged that the cessation of his affiliation with Varus" on January 24, 2012.  *See* Am. Compl. ¶ 38.  This circumstance, if true, was never conveyed to Mr. Greenberger.  The Sandor Affidavit also contained the allegedly false assertion that "Gulian did not induce or solicit the Greenbergers to invest with Varus."  *Id.* at ¶ 39.  The Sandor Affidavit also states that Gulian never executed any "formation agreements or other documentation" concerning Varus, although he was purportedly "informally affiliated with Varus."  *Id.* at ¶ 40.  If true, these circumstances were contrary to the representations that Gulian and Sandor made to Mr. Greenberger concerning Gulian's affiliation with Varus.  The Sandor Affidavit states that Gulian became affiliated with Varus "on the assumption that Varus was actually properly established on a formal basis," and that neither he nor Varus executed formation agreements or other documentation.  *See* Certification of James H. Steigerwald ("Steigerwald Cert.") Ex. A at ¶ 2.  The Sandor Affidavit never states that Varus was properly established.  *See* Am. Compl. at ¶ 41.

Based on the Sandor Affidavit, Plaintiffs allege that "Varus doesn't exist, may never have existed, and Gulian's role in Varus was falsely represented to the Greenbergers in order to induce them into investing monies that have disappeared into the hands of Sandor and/or Gulian."  *Id.* at ¶ 44.  To date, Plaintiffs allege they still do not know the location of the $213,000 they invested with Sandor and Gulian, nor have Sandor or Gulian ever provided any information to the Greenbergers concerning their investment.

On January 31, 2013, Plaintiffs filed the current action, bringing seven causes of action against Defendants:  breach of contract, breach of the covenant of good faith and fair dealing,

negligence, breach of fiduciary duty, fraud, tortious interference with prospective economic gain, and unjust enrichment.  On April 14, 2014, Plaintiffs filed an Amended Complaint, in which they bring the same seven causes of action.  Defendant Gulian has moved to dismiss the Complaint, or, in the alternative, seeks a more definitive statement.

## II.      Standard of Review

Federal Rule of Civil Procedure 12(b)(6) provides that a court may dismiss a complaint "for failure to state a claim upon which relief can be granted."  Fed. R. Civ. P. 12(b)(6).  When reviewing a motion to dismiss, courts must first separate the factual and legal elements of the claims, and accept all of the well-pleaded facts as true.  *See Fowler v. UPMC Shadyside*, 578 F.3d 203, 210–11 (3d Cir. 2009).  All reasonable inferences must be made in the Plaintiff's favor. *See In re Ins. Brokerage Antitrust Litig.*, 618 F.3d 300, 314 (3d Cir. 2010).  In order to survive a motion to dismiss, the plaintiff must provide "enough facts to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007).  This standard requires the plaintiff to show "more than a sheer possibility that a defendant has acted unlawfully," but does not create as high of a standard as to be a "probability requirement." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009).

The Third Circuit has required a three-step analysis to meet the plausibility standard mandated by *Twombly* and *Iqbal*.  First, the court should "outline the elements a plaintiff must plead to a state a claim for relief."  *Bistrian v. Levi*, 696 F.3d 352, 365 (3d Cir. 2012).  Next, the court should "peel away" legal conclusions that are not entitled to the assumption of truth.  *Id.*; *see also Iqbal*, 556 U.S. 678–79 ("While legal conclusions can provide the framework of a complaint, they must be supported by factual allegations.").  It is well-established that a proper complaint "requires more than labels and conclusions, and a formulaic recitation of the elements

of a cause of action will not do." *Twombly*, 550 U.S. at 555 (internal quotations and citations omitted).   Finally, the court should assume the veracity of all well-pled factual allegations, and then "determine whether they plausibly give rise to an entitlement to relief." *Bistrian*, 696 F.3d at 365 (quoting *Iqbal*, 556 U.S. at 679).   A claim is facially plausible when there is sufficient factual content to draw a "reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 678.   The third step of the analysis is "a context-specific task that requires the reviewing court to draw on its judicial experience and common sense." *Id.* at 679.

In addition, Rule 9(b) requires that "in all averments or fraud or mistake, the circumstances constituting fraud or mistake shall be stated with particularity. Malice, intent, knowledge, and other condition of mind of a person may be averred generally." Fed. R. Civ. P. 9(b).   Rule 9(b)'s heightened pleading standard for fraud claims is meant "to place the defendants on notice of the precise misconduct with which they are charged, and to safeguard defendants against spurious charges of immoral and fraudulent behavior." *Seville Indus. Mach. Corp. v. Southmost Mach.*, 742 F.2d 786, 791 (3d Cir. 1984).   In general, the complaint must describe the "who, what, when, where and how of the events at issue." *In re Rockefeller Ctr. Props. Secs. Litig.*, 311 F.3d 198, 217 (3d Cir. 2002) (citations and quotations omitted).

Generally, a district court may not consider matters extraneous to the complaint when determining a Rule 12(b)(6) motion to dismiss. *See In re Burlington Coat Factory Sec. Litig.*, 114 F.3d 1410, 1426 (3d Cir. 1997).   This means that the district court relies on "the complaint, attached exhibits, and matters of public record." *Sands v. McCormick*, 502 F.3d 263, 268 (3d Cir. 2007).   A district court may, however, appropriately consider "a document integral to or explicitly relied upon in the complaint may be considered without converting the motion to

dismiss into one for summary judgment." *Angstadt v. Midd–West Sch. Dist.*, 377 F.3d 338, 342 (3d Cir. 2004).

### III.  Discussion

As discussed, Plaintiffs' Complaint asserts seven causes of action against Defendants: breach of contract, breach of the covenant of good faith and fair dealing, negligence, breach of fiduciary duty, fraud, tortious interference with prospective economic gain, and unjust enrichment.  Defendant Gulian moves to dismiss the Amended Complaint on two major grounds: first, that Plaintiffs' contract and quasi-contract claims fail as a matter of law because Gulian was not personally a party to the contract at issue; second, that Plaintiffs' tort claims are precluded by the New Jersey economic loss rule.  Defendant Gulian also argues that Plaintiffs have failed to allege a claim for fraud with the required specificity under Rule 9(b).  The Court addresses these arguments below.

#### A.    Breach of Contract Claim

First, Defendant Gulian argues that Plaintiffs' breach of contract claim must be dismissed because Plaintiffs have failed to allege the existence of a contract between Plaintiffs and Gulian personally.  Generally, a limited liability company, like Varus, is an entity separate and distinct from its employees and officers; accordingly, contractual agreements with such companies do not impute liability onto its officers.  *See, e.g.*, *Gardner v. The Calvert*, 253 F.2d 395, 398 (3d Cir. 1958).  An officer, however, may be found individually liable if there is evidence that an officer "intended to be bound personally, or that he acted beyond the scope of his authority . . . ." *Id.*  Here, Gulian asserts that the Amended Complaint only alleges the existence of a contractual relationship between himself and Plaintiffs based upon his position as an "officer[], director[], member[], and founding owner[] of Varus."  Def.'s Br. at 8 (quoting Am. Compl. ¶¶ 46, 59–60,

68–69).  Gulian argues that these assertions show that Plaintiffs entered an agreement with Varus only, and not with Gulian personally; consequently, he argues that Plaintiffs' contract claim against him individually must be dismissed.

While legally sound, Defendant Gulian's argument misses the mark based on the facts as alleged in the Amended Complaint.  Plaintiffs assert that they entered into a separate contract with Gulian "by which he obligated himself, personally, to undertake certain tasks on behalf of the Plaintiffs."  Pl.'s Opp. Br. at 4.  The Court agrees.  Plaintiffs have pled sufficient factual allegations that, if true, would state a plausible basis for a breach of contract claim.  For example, Plaintiffs have alleged that Sandor and Gulian represented to Plaintiffs that they were creating an investment fund to be known as Varus, that they would make the necessary payments to CAMA as they came due, and that they would make the necessary custodial fees that were necessary to maintain the Greenbergers' IRA accounts with and through CAMA.  *See, e.g.*, Compl. ¶¶ 9, 21, 47–49.  Plaintiffs have alleged that Defendants thereafter failed to invest their funds as promised, failed to properly form Varus, and also failed to pay the requisite administrative and custodial fees.  Plaintiffs argue that Gulian and Sandor also represented Varus itself as an investment, and that Plaintiffs "entered into an agreement with Sandor and Gulian in which Sandor and Gulian agreed to sell investment funds in Varus . . . ."  *Id.* at ¶ 46.

As Plaintiffs argue, these allegations establish the existence of agreements with Gulian and Sandor as individuals, not as officers.  This point is furthered by Plaintiffs' contentions that Varus was never formed, or that, if it was formed, it was never operational and Plaintiffs' retirements funds were never in fact invested in Varus.  At this stage of the proceedings, to find that Plaintiffs' breach of contract claim is insufficient as a matter of law because they had an agreement with Varus, a company that they allege never existed, is inappropriate.  Quite simply,

Gulian's arguments are better suited after a period of discovery, at the summary judgment stage. Otherwise, when reviewing the Amended Complaint in a light most favorable to Plaintiffs, the Court must find that Plaintiffs have sufficiently alleged a breach of contract claim, and deny Gulian's motion to dismiss Plaintiffs' contract claim.

### B.    *Breach of the Covenant of Good Faith and Fair Dealing*

Plaintiffs have next brought a claim for the breach of the implied covenant of good faith and fair dealing.  In New Jersey, parties to a contract have a duty of good faith and fair dealing imposed on them.  *See Brunswick Hills Racquet Club, Inc. v. Route 18 Shopping Ctr. Assocs.*, 182 N.J. 210, 224 (2005).  "The covenant of good faith and fair dealing calls for parties to a contract to refrain from doing 'anything which will have the effect of destroying or injuring the right of the other party to receive' the benefits of the contract."  *Id.* at 224–25 (quoting *Palisades Props., Inc. v. Brunetti*, 44 N.J. 117, 130 (1965)); *see also Sons of Thunder, Inc. v. Borden*, 148 N.J. 396, 423 (1997).  There are a "myriad forms conduct that may constitute a violation of good faith and fair dealing," making it a fact-sensitive determination regarding whether the covenant has been violated.  *Brunswick Hills Racquet Club*, 182 N.J. at 225.  Generally, however, if a plaintiff's "reasonable expectations are destroyed when a defendant acts with ill motives and without any legitimate purpose" or if he detrimentally relies "on a defendant's intentional misleading assertions," he is entitled to relief.  *Id.* at 226 (citing *Wilson v. Amerada Hess Corp.*, 168 N.J. 236, 251 (2001); *Bak-a-Lum Corp. v. Alcoa Bldg. Prods., Inc.*, 69 N.J. 123, 129–30 (1976)).

Because the Court finds that Plaintiffs have sufficiently alleged the existence of a contractual relationship, the only issue is if Plaintiffs have sufficiently alleged that Gulian breached an implied covenant.  Defendant Gulian asserts that any breach alleged by Plaintiffs is

expressly alleged to be part of the parties' agreement. While the Court agrees that the Amended Complaint is not entirely clear about the terms of the agreement between Plaintiffs and Gulian, when reviewing the pleadings in the light most favorable to Plaintiffs, Plaintiffs' allegations are sufficient to allow the case to proceed to discovery on the breach of the implied covenant of good faith and fair dealing claim. A review of Plaintiffs' Complaint does sufficiently establish the existence of a contractual relationship between the parties, and does allege facts insinuating that Gulian acted in a way that had "the effect of destroying or injuring the right of the other party to receive the benefits of the contract." *Brunswick Hills Racquet Club*, 182 N.J. at 224–25. Whether this claim will withstand summary judgment, at which point the terms of the contractual relationship should be sketched out with greater specificity, is a different matter. At this stage of the proceedings, Gulian's motion to dismiss Plaintiffs' claim for a breach of the implied covenant of good faith and fair dealing must be denied.

### C.    *Negligence Claim*

In their negligence claim, Plaintiffs allege that Defendant Gulian was negligent in failing to properly manage their investments. *See* Am. Compl. ¶¶ 57–63. Under New Jersey law, a negligence claim requires proof that (1) the plaintiff was owed a duty of care by the defendant, (2) the defendant breached that duty, and (3) that this breach was the proximate cause of damages suffered by the plaintiff. *See Worrell v. Elliot & Frantz*, 799 F. Supp. 2d 343, 353 (D.N.J. 2011). A review of the Amended Complaint shows that Plaintiffs have properly alleged each of the elements of a negligence claim.

Defendant Gulian argues, and Plaintiffs do not dispute, that Plaintiffs' negligence claim is barred by New Jersey's economic loss rule. Under New Jersey law, "the economic loss doctrine prohibits plaintiffs from recovering in tort economic losses to which they are entitled only by

contract." *Arcand v. Brother Int'l Corp.*, 673 F. Supp. 2d 282, 308 (D.N.J. 2009) (citing *Saltiel v. GSI Consultants, Inc.*, 170 N.J. 297, 310 (2002)).  The relevant inquiry for whether a tort claim can coexist with a breach of contract claim focuses on whether the alleged tortious conduct is extrinsic to the contract between the parties.  *See id.*  A review of Count Three of Plaintiffs' Amended Complaint reveals that Plaintiffs are seeking damages based upon Defendant Gulian's alleged mismanagement of their investment, but this claim arises out of Defendant Gulian's failure to perform in accordance with the parties' contract.  In other words, Plaintiffs have alleged that Defendant Gulian negligently performed his contractual task.  Plaintiffs have neither alleged nor argued any obligations that are not encompassed by the parties' contract in regards to their negligence claim—indeed, Plaintiffs have not responded to the motion to dismiss their negligence claim at all.  Accordingly, the Court must dismiss Plaintiffs' negligence claim, as it is barred by the economic loss doctrine.

### D.       Breach of Fiduciary Duty Claim

Defendant Gulian next argues that Plaintiffs' claim for breach of fiduciary duty must be dismissed.  Gulian asserts that Plaintiffs' breach of fiduciary duty claim is based solely on the parties' contractual relationship, and is thereby precluded by the economic loss doctrine.  *See* Def.'s Br. at 14.  Alternatively, Gulian argues that he did not owe Plaintiffs a duty of care as an officer of Varus.  *See* Def.'s Reply Br. at 3.

As discussed, "a party cannot maintain a negligence action, in addition to a contract action, unless the plaintiff can establish an independent duty of care."  *Saltiel v. GSI Consultants, Inc.*, 170 N.J. 297, 314 (2002).  The existence of a fiduciary duty is a fact-specific analysis, and is not necessarily governed by a contract.  *See Shan Indus., LLC v. Tyco Int'l (US), Inc.*, Civ. No. 04-1018 (HAA), 2005 U.S. Dist. LEXIS 37983, at *58–59 (D.N.J. Sept. 9, 2005) (citing *Berman*

*v. Gurwicz*, 189 N.J. Super. 89, 93–94 (App. Div. 1981)).  As indicated by the cases cited by Defendant, courts have analyzed factors such as the parties' expectations regarding individual liability under a contract or the expected scope of contractual obligations when determining whether a breach of fiduciary duty claim sounded more in tort or contract.  *See, e.g., Saltiel*, 170 N.J. at 315–17.  Because of the factual nature of these findings, the objection to this claim is premature and better suited for the summary judgment stage.  This is particularly essential here, where determinations regarding if Varus was ever formally created could potentially impact the existence of a fiduciary duty.[1]

Further, a review of Plaintiffs' Amended Complaint reveals sufficient factual allegations to support their argument that Gulian owed an independent duty to them external to the contract to establish a plausible claim for breach of fiduciary duty.   It is well-established that a defendant can voluntarily assume a duty in addition to those obligations created by a contractual agreement.  *See, e.g., Saltiel*, 170 N.J. at 315 (citing *Scribner v. O'Brien, Inc.*, 363 A.2d 160, 168 (Conn. 1975) (describing that corporate officer defendant who had held himself out to be a skilled builder had a duty of care consistent with that representation imposed upon him); *Stewart Title Guar. Co. v. Greenlands Realty L.L.C.*, 58 F. Supp. 2d 370, 386–87 (D.N.J. 1999) (citing *Walker Rogge, Inc. v. Chelsea Title & Guaranty Co.*, 116 N.J. 517 (1989)).  As Plaintiffs argue, they have alleged facts establishing Gulian assumed duties extraneous to those contained within an agreement, and that he "made numerous representations apart from the contract regarding his role in Varus, his ability to manage Varus and the Plaintiffs' investments, and his expertise in this enterprise . . . ."  Pls.' Opp. Br. at 12 (citing Am. Compl. ¶¶ 9, 10, 14, 15, 19, 23, 25, 28, 29,

---

[1] Significantly, part of Plaintiffs' claim currently relies on certain fiduciary duties they alleged they were owed by Gulian, in his capacity as an owner and officer at Varus, after they purchased certain ownership shares in Varus.

35, 36, 42, 44).  These allegations, including certain representations made by Gulian, create a plausible claim for breach of fiduciary duty at this stage of the proceedings.

Finally, Plaintiffs have argued that part of their claim relies upon the existence of a fiduciary duty owed to them by Gulian due to his status as an officer and owner of Varus, if Varus existed.  Defendant Gulian has argued that such a duty cannot exist as a matter of law, because Gulian only owed a duty of care to Varus and its members.  *See* Def.'s Reply Br. at 3. Plaintiffs, however, have alleged that they had purchased ownership interests in Varus. Assumedly, therefore, the existence of a fiduciary duty to Plaintiffs would exist.  Accordingly, Defendant Gulian's motion to dismiss must be denied at this stage of the proceedings.

### E.   Claim for Tortious Interference

In order to succeed with a claim for tortious interference with prospective economic gain under New Jersey law, a plaintiff must allege: (1) a reasonable expectation of economic advantage or existing contractual relation; (2) interference with that right, or a contract, intentionally and with malice; (3) that causes a loss of that prospective gain as a result of that interference; and (4) damages.  *See Macdougall v. Weichert*, 144 N.J. 380, 403–04 (1996).  Here, Defendant Gulian does not argue that Plaintiffs have failed to state a claim generally for tortious interference; rather, he asserts that Plaintiffs' claim fails as a matter of law because he, as an alleged officer of Varus, cannot be found to have interfered with Plaintiffs' contract with Varus.

Under New Jersey law, a defendant cannot commit tortious interference with a contract or economic relationship to which it is a party; indeed, "it is 'fundamental' to a cause of action for tortious interference . . . that the claim be directed against defendants who are not parties to the relationship."  *Printing Mart–Morristown v. Sharp Elecs. Corp.*, 116 N.J. 739, 752 (1989). Because a corporation can only act through its officers and agents, the rule established in

*Printing Mart* extends to corporate agents. *See F.D.I.C. v. Bathgate*, 27 F.3d 850, 875 (3d Cir. 1994). "Since *Printing Mart*, a clear-cut consensus has emerged that if an employee or agent is acting on behalf of his or her employer or principal, then no action for tortious interference will lie. If, on the other hand, the employee or agent is acting outside the scope of his or her employment or agency, then an action for tortious interference will lie." *DiMaria Const., Inc. v. Interarch*, 351 N.J. Super. 558, 568 (App. Div. 2001) *aff'd*, 172 N.J. 182 (2002) (internal citations omitted). As the Third Circuit has concluded, "an employee who acts for personal motives, out of malice, beyond his authority, or otherwise not 'in good faith in the corporate interest' fall beyond the scope of the privilege." *Varrallo v. Hammond Inc.*, 94 F.3d 842, 849 n.11 (3d Cir. 1996) (citing cases); *see also Silvestre v. Bell Atl. Corp.*, 973 F. Supp. 475, 486 (D.N.J. 1997) *aff'd*, 156 F.3d 1225 (3d Cir. 1998) ("An employee working for the corporation with which the plaintiff allegedly had a contract cannot serve as the third-party necessary for the tripartite relationship, unless the employee acted outside the scope of his employment."); *Obendorfer v. Gitano Group, Inc.,* 838 F. Supp. 950, 956 (D.N.J.1993).

Here, Plaintiffs have alleged that Defendant Gulian acted *ultra vires*, and therefore is liable for interfering with any contract Varus had with Plaintiffs.[2] In support of this claim, Plaintiffs have alleged certain facts that are sufficient to allow for an inference that Gulian was acting outside the scope of his relationship with Varus. Specifically, Plaintiffs have alleged facts indicating that, after Plaintiffs' investment with Varus and Tradition, Gulian and Sandor ceased any major communications with Plaintiffs, including a response to divest and return their investments to Plaintiffs. Plaintiffs allege that Gulian and Sandor have refused to confirm that

---

[2] The Court notes that Plaintiffs have also alleged that Gulian may not have been officially affiliated with Varus, a point that would appear to alleviate Defendant's issues with the tortious interference claim. More significantly, these issues of whether Varus was ever officially formed or whether Gulian was an officer or agent of Varus emphasizes the need for discovery in this case before dismissing any claims.

Varus held or continues to hold their investment.  Overall, Plaintiffs have alleged facts sufficient to infer that Gulian either failed to make Plaintiffs' investment with Varus or failed to administer the Plaintiffs' accounts properly, leading to a complete loss of their investment.  These allegations sufficiently allow for an inference that, assuming Varus was created, Gulian acted for personal motive, beyond his authority, or otherwise did not act in good faith in the corporate interest.  Thus, the Amended Complaint adequately alleges that Gulian acted outside the scope of his employment and therefore sufficiently states a plausible interference claim.

### F.    Claim for Unjust Enrichment

Under New Jersey law, there are three elements a plaintiff must allege to properly state a claim for unjust enrichment:  "(1) the defendant received a benefit, (2) at the plaintiff's expense, (3) under circumstances that would make it unjust for the defendant to retain the benefit without paying for it."  *Jurista v. Amerinox Processing, Inc.*, 492 B.R. 707, 754 (D.N.J. 2013).  The doctrine is based on "the equitable principle that a person shall not be allowed to enrich himself unjustly at the expense of another."  *Associates Commercial Corp. v. Wallia*, 211 N.J. Super. 231, 243 (App. Div. 1986) (citing *Callano v. Oakwood Park Homes Corp.,* 91 N.J. Super. 105, 108 (App. Div. 1966)).

Defendant Gulian argues that Plaintiffs' claim for unjust enrichment fails because Plaintiffs failed to prove that Gulian was unjustly enriched by Plaintiffs' investment with Varus.  In other words, Gulian asserts that Plaintiffs' allegations show that "the only party that was arguably enriched by Plaintiffs' investment was Varus."  *See* Def.'s Br. at 17.  Plaintiffs disagree, emphasizing that they have alleged that Gulian and Sandor never formed and/or operated Varus; consequently, they argue, "the entity purportedly known as Varus could not have been enriched, and Gulian necessary *was* enriched."  *See* Pls.' Opp. Br. at 16.  At this stage

16

of the proceedings, the Court must agree.  Plaintiffs have alleged that they entrusted $213,000 to Gulian and Sandor, and that this investment is still missing and unaccounted for nearly three years later.  *See* Am. Compl. ¶¶ 23, 26, 27, 30, 34, 43, 95, 96.  These allegations, combined with the mystery surrounding the formation of Varus, are sufficient to allow Plaintiffs' claim for unjust enrichment to proceed to discovery.  Once again, whether or not this claim will survive summary judgment is another matter.  At this stage of the proceedings, however, Gulian's motion to dismiss the unjust enrichment claim must be denied.

### G.    Claim for Fraud

Finally, the Court turns to Plaintiffs' claim for fraud.  A common law claim for fraud requires proof of five elements: "(1) a material misrepresentation of a presently existing or past fact; (2) knowledge or belief by the defendant of its falsity; (3) an intention that the other person rely on it; (4) reasonable reliance thereon by the other person; and (5) resulting damages." *Banco Popular N. Am. v. Gandi*, 184 N.J. 161, 172–73 (2005) (quoting *Gennari v. Weichert Co. Realtors*, 148 N.J. 582, 610 (1997)).  Allegations of fraud in federal court are subject to the requirements of Rule 9(b), under which a plaintiff must plead the circumstances of the alleged fraud with sufficient particularity to place the defendants on notice of the "precise misconduct with which they are charged."  *Lum v. Bank of America*, 361 F.3d 217, 223-24 (3d Cir. 2004).  In order to satisfy this standard, a plaintiff "must plead or allege the date, time, and place of the alleged fraud or otherwise inject precision or some measure of substantiation into a fraud allegation."  *Frederico v. Home Depot*, 507 F.3d 188, 200 (3d Cir. 2007) (internal citations omitted); *see also In re Advanta Corp. Sec. Litig.*, 180 F.3d 525, 534 (3d Cir. 1999) (explaining that Rule 9(b) "requires plaintiffs to plead the 'who, what, when, where, and how: the first

paragraph of any newspaper story'") (quoting *DiLeo v. Ernst & Young*, 901 F.2d 624, 627 (7th Cir. 1990)).

Here, Defendant Gulian argues that Plaintiffs have not pled their fraud allegations with sufficient particularity.  Gulian argues that Plaintiffs have failed to sufficiently plead the misrepresentations that he allegedly made, asserting that "Plaintiffs have not sufficiently pled the who, what, when, where and how of the misrepresentations allegedly made by Mr. Gulian." Def.'s Br. at 19.  These specifications, however, of date, time, or place are sufficient, but not *necessary*, to satisfy Rule 9(b).  *See Seville Indust. Mach.*, 742 F.2d at 791.  Rather, as explained by the Third Circuit, "[p]laintiffs are free to use alternative means of injecting precision and some measure of substantiation into their allegations of fraud."  *Id.*  Here, Plaintiffs have made the following allegations regarding misrepresentations:

> Throughout late 2010 and into 2011, Sandor and Gulian contacted Marc, together or separately, on no less than fifty separate occasions, often in personal visits, about investing in Varus.  They visited [the Greenberger's] home on numerous occasions, Marc visited Gulian at Gulian's home on numerous occasions and Marc and Gulian visited Sandor at his home on numerous occasions.  During each of these visits, Gulian and/or Sandor spoke in detail to Mark about Varus.

Am. Compl. ¶ 11.  Plaintiffs also alleged how "[i]n these meetings, and in telephone calls, Gulian identified numerous companies for Marc and Nancy to invest in . . . ."  *Id.* at ¶ 12. Plaintiffs also alleged that Gulian and Sandor had numerous conversations with Mr. Greenberger "concerning the value and potential reward of these investments, in order to induce them to invest money into Varus."  *Id.* at ¶ 14.   In sum, Plaintiffs have alleged that Gulian, throughout late 2010 and into 2011, had numerous in-person conversations at Gulian's home, Plaintiffs' home, or Sandor's home, as well as calling the Greenbergers—particularly Mr. Greenberger—on the phone about investing in and through Varus.  During these conversations, Gulian identified numerous companies for the Greenbergers to invest in, and referenced the value and potential

reward of these investments.  Defendants Gulian and Sandor also promised to the Greenbergers

that they and Varus "had the ability, experience and expertise to handle the Greenbergers'

investments and to properly manage Varus in accordance with the law."  *Id.* at ¶ 72.  Gulian and

Sandor also represented that they or Varus would make the proper custodial payments associated

with the Greenbergers' CAMA account.  Part of these alleged misrepresentations include the

formation and legitimacy of Varus as an investment vehicle generally, as well as Gulian's plan

and ability to invest on behalf of the Greenbergers.  *See id.* at ¶¶ 72–74.

The Court finds that the Amended Complaint surely places Gulian on notice of the

misconduct alleged by him, including the nature of the misrepresentations.[3]  *See Seville Indust.*

*Mach.*, 742 F.2d at 791 (explaining that one purpose of Rule 9(b) is "to place the defendants on

notice of the precise misconduct with which they are charged").  Rule 9(b) is concerned with

safeguarding "defendants against spurious charges of immoral and fraudulent behavior."  *Id.*

There is no need for such a concern here, where Plaintiffs have done far more than allege "fraud"

against Gulian; rather, Plaintiffs have sufficiently "inject[ed] precision and some measure of

substantiation into their allegations of fraud."  *Id.*  Plaintiffs' reliance—their investment of

$213,000 investment with Defendants—follows from these alleged misrepresentations.

Defendant Gulian's final argument is that Plaintiffs failed to sufficiently plead that he

intended to induce Plaintiffs to rely on the misrepresentations he allegedly made to Plaintiffs.

Under Rule 9(b), while circumstances constituting fraud must be pled with particularity, a

---

[3] The Court disagrees with Gulian's contention that each of the 50 separate conversations have to be assigned to each speaker individually or to be set with a specific location and date at this stage of the proceedings.  Under Rule 9(b), pleadings that contain "collectivized allegations against 'defendants' do not suffice."  *Naporano Iron & Metal Co. v. American Crane Corp.*, 79 F. Supp. 2d 494, 511 (D.N.J. 1999).  Rather, Rule 9(b) requires fraud to be plead with particularity to each defendant, "thereby informing each defendants of the nature of its alleged participation in the fraud."  *Id.*  While the Court finds that the Amended Complaint, in general, does sufficiently inform Gulian of the nature of his purported participation in the fraudulent activity, any argument to the contrary nevertheless would be misplaced because Plaintiffs allege that Gulian and Sandor acted jointly to perpetrate the alleged fraud.  *See Watts v. Jackson Hewitt Tax Serv.*, 579 F. Supp. 2d 334, 352 (E.D.N.Y. 2008); *see, e.g.*, Am. Compl. ¶¶ 9–10.

plaintiff may aver "generally" conditions of a person's mind, such as intent.  *See* Fed. R. Civ. P.

9(b).  Therefore, when pleading intent, "the complaint must contain more than a 'conclusory

allegation,' and the pleading must meet the 'less rigid—though still operative—strictures of Rule

8.'" *Gotthelf v. Toyota Motor Sales, U.S.A., In.*, 525 F. App'x 94, 103 n.15 (3d Cir. 2013)

(quoting *Iqbal*, 556 U.S. at 686–87).  Defendant Gulian has asserted that Plaintiffs must plead

facts sufficient to allow for a "strong inference of fraudulent intent," which can be established by

"(a) by alleging facts to show that defendants had both motive and opportunity to commit fraud,

or (b) by alleging facts that constitute strong circumstantial evidence of conscious misbehavior

or recklessness." Def.'s Br. at 22 (quoting *Lerner v. Fleet Bank, N.A.*, 459 F.3d 273, 290–91 (2d

Cir. 2006)).  Both Defendant Gulian and Plaintiffs have mistakenly indicated that *Lerner* was a

Third Circuit case; it is, however, a Second Circuit case.  While the Third Circuit has adopted

this standard for establishing fraudulent intent in the securities fraud realm, *see In re Burlington

Coat Factory Sec. Litig.*, 114 F.3d 1410, 1418 (3d Cir.1997), the Court has found no case law

indicating that a plaintiff must allege such specific facts when alleging common law fraud in this

Circuit.

Therefore, the Court finds that Plaintiffs' Amended Complaint clearly meets the standard

under Rule 9(b).  Contrary to Gulian's assertions, Plaintiffs have provided sufficient facts to

allow for an inference that Gulian intended for Plaintiffs to rely on his alleged

misrepresentations.  Plaintiffs have alleged that Gulian and Sandor emphasized their experience

as investors and their expertise in the investment business, and regularly communicated with

Plaintiffs and solicited their investments over some period of time during personal visits.  After

finally choosing to invest with Defendants, Plaintiffs have alleged that Defendants essentially

ceased all communications with Plaintiffs and failed to respond to Mr. Greenberger's efforts to

reach them.  *See* Am. Compl. ¶¶ 23, 25.  Plaintiffs have alleged that they requested unit or

ownership certificates reflecting their investments through Varus in Tradition or their

investments in Varus, and never received any response.  In 2012, Mr. Greenberger made his first

request that Gulian and Sandor divest and return to Plaintiffs their respective investments; Mr.

Greenberger repeated this request several times throughout the next year and received no

response at any time.  Plaintiffs allege that Gulian and Sandor failed and refused to communicate

with them, ignored Plaintiffs' oral and written requests for information concerning their

investments, and have failed and refused to confirm that Varus still holds their investments.  Am.

Compl. ¶ 34.  Plaintiffs further allege that "Varus has abandoned its former mailing address, has

shut down its website and is no longer functioning as a going forward entity-if it ever was."  *Id.*

at  ¶ 35.  Plaintiffs have alleged that they have never received proof that Varus was ever created

or that it ever formally existed.  They point to the Sandor Affidavit, which fails to state that

Varus was formed or incorporated.  Plaintiffs also have raised issues regarding Gulian's role in

Varus and how it was represented to them.  These allegations easily allow for an inference that

Gulian intended Plaintiffs to rely on the alleged misrepresentations, particularly when

considering the abrupt change in Gulian's behavior and attitude towards the Plaintiffs after

Plaintiffs had entrusted their investment with him and Sandor.  Further, even if Plaintiffs were

under an obligation to allege facts giving rise to a "strong inference of fraudulent intent" to

survive Rule 9(b)'s requirements, they have done so.  Overall, the Amended Complaint satisfied

the notice concerns behind Rule 9(b)'s heightened pleading requirement, and the Court finds

Gulian's arguments without merit.  Accordingly, the motion to dismiss the common law fraud

claim is denied.

### H.     Request under Rule 12(e)

Finally, Gulian has also requested, in the alternative, for a more definite statement under Rule 12(e).  Gulian argues that Plaintiffs' fraud claim "is so vague and ambiguous that Mr. Gulian cannot reasonably be required to frame a responsive pleading at this time."  Def.'s Br. at 25.  Federal Rule of Civil Procedure 12(e) authorizes a motion for a more definite statement if the complaint is "so vague or ambiguous that a party cannot reasonably be required to frame a responsive pleading."  Fed. R. Civ. P. 12(e).  Rule 12(e) is meant for "the rare case where because of the vagueness or ambiguity of the pleading the answering party will not be able to frame a responsive pleading."  *Schaedler v. Reading Eagle Publications, Inc.*, 370 F.2d 795, 798 (3d Cir. 1967).  In other words, a request under Rule 12(e) should be granted where "the opposing party cannot respond, even with a simple denial, in good faith, without prejudice to itself."  *MK Strategies, LLC v. Ann Taylor Stores Corp.*, 567 F. Supp. 2d 729, 736–37 (D.N.J. 2008) (quotation omitted).   Courts should not grant such motions simply for lack of detail in a complaint because "[i]t is not the function of 12(e) to provide greater particularization of information alleged in the complaint or which presents a proper subject for discovery."  *Id.* (quoting *Lincoln Labs., Inc. v. Savage Labs., Inc.*, 26 F.R.D. 141, 142–43 (D. Del. 1960)).

The Court has found that Plaintiffs have sufficiently pled their fraud claim.  They have set forth sufficient facts identifying both the specifics of the alleged misrepresentations made by Gulian and as well as Gulian's fraudulent intent.  The Amended Complaint is simply not so vague, ambiguous, or intelligible that Gulian cannot respond in good faith.  The details sought by Gulian will most likely be disclosed in discovery.  Like Defendant's other arguments, if the facts revealed in discovery do not support Plaintiffs' claims, then Defendant Gulian is free to file a

motion for summary judgment on that basis.  Gulian's motion for a more definite statement under Rule 12(e), however, must be denied.

**IV.    Conclusion**

Overall, the majority of Defendant's arguments are simply premature.  As the Court has indicated numerous times throughout this Opinion, there are simply too many questions surrounding Gulian's affiliation with Varus, and—more importantly—whether Varus was ever officially formed.  Whether or not all of Plaintiffs' remaining claims will survive the summary judgment stage after a period of discovery is another matter.  At this stage of the proceedings, however, Plaintiffs' Amended Complaint establishes a plausible factual basis for each claim. The one exception is Plaintiffs' negligence claim, which must be dismissed because it is barred by the economic loss doctrine.  For these reasons, the Court denies in part and grants in part Defendant Gulian's motion to dismiss, and denies Defendant Gulian's motion for a more definite statement [ECF No. 14].  An appropriate Order accompanies this Opinion.

/s/ Joel A. Pisano
JOEL A. PISANO, U.S.D.J.

Dated: December 10, 2014